Robert A. Naeve (State Bar No. 106095)
Email: rnaeve@jonesday.com
Steven M. Zadravecz (State Bar No. 185676)
Email: szadravecz@jonesday.com
John P. Migliarini (State Bar No. 266920)
Email: jmigliarini@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA  92612
Telephone:     (949) 851-3939
Facsimile:     (949) 553-7539

Attorneys for Defendant
GODIVA CHOCOLATIER, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LIPPOLD; individually and on behalf of members of the general public similarly situated, and as aggrieved employees pursuant to the Private Attorneys General Act ("PAGA"),<br><br>Plaintiffs,<br><br>v.<br><br>GODIVA CHOCOLATIER, INC., an unknown corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 3:10-CV-00421-SI<br><br>**DEFENDANT GODIVA CHOCOLATIER, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO REMAND**<br><br>Date:       April 9, 2010<br><br>Time:       9:00 a.m.<br><br>Courtroom:  10 |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS .........................................................................2

    A.    Diversity Of Citizenship. ..........................................................2

        1.    Lippold Is A Citizen Of California. ..............................2

        2.    Godiva Is A Citizen Of New York And New Jersey..................................................................................2

    B.    Amount In Controversy – Lippold's Claims. ............................3

        1.    The Amount In Controversy For Lippold's First Claim For Relief For Overtime Compensation And Penalties Ranges From $30,519.20 To $20,349.60. ....................3

        2.    The Amount In Controversy For Lippold's Second And Third Claims For Relief For Meal And Rest Period Violations Is $6,108. ..............................................6

        3.    The Amount In Controversy For Lippold's Fourth Claim For Relief For Alleged Failure to Pay Wages During Employment s Is $1,900.00. .................................7

        4.    The Amount In Controversy For Lippold's Fifth Claim For Failure To Pay Wages Upon Termination Of Employment Is $5,639.20. ...............................7

        5.    The Amount In Controversy For Lippold's Sixth Claim For Failure To Provide Proper Pay Stubs Is $2,850.00..............................................................................8

        6.    The Amount In Controversy For Lippold's Seventh Claim For Failure To Maintain Adequate Payroll Records Is $1,900.00..........................................................9

    C.    Amount In Controversy – Godiva's Notice Of Removal Assumes Only That Lippold Would Incur $40,000 In Attorneys' Fees. .......................................................................9

    D.    In Summary, Godiva's Conservative Estimate Of The Amount In Controversy Is $78,746.80. ................................11

ARGUMENT ................................................................................................................11

I.    *MCNUTT, KANTER* AND *GAUS* ESTABLISH A TWO STEP
      STANDARD FOR EVALUATING THE PROPRIETY OF
      REMOVAL; DEFENDANTS ARE NOT REQUIRED TO
      "PROVE" DIVERSITY IN NOTICES OF REMOVAL. ...................................11

II.   COMPLETE DIVERSITY EXISTS BETWEEN GODIVA AND
      LIPPOLD. ..........................................................................................................13

      A.    Godiva Is A Citizen Of New York And New Jersey. ..............................13

      B.    Lippold Is A Citizen Of California. ........................................................13

III.  THE AMOUNT IN CONTROVERSY EXCEEDS $75,000. ..............................15

      A.    Godiva's Notice Of Removal Satisfies All Applicable
            Requirements For Establishing Jurisdictional Amount In
            Controversy. ...........................................................................................15

      B.    Godiva Established Its Good Faith Estimate Of The Value
            Of Lippold's Various Claims, From $38,746.80 To
            $48,916.40. ...............................................................................................16

      C.    Godiva Established That Lippold's Attorneys' Fees Will
            Easily Exceed $40,000. ..........................................................................16

CONCLUSION .............................................................................................................17

TABLE OF AUTHORITIES

**Cases**

*Bandoy v. Huh*, 1996 WL 675978 (1996) ...................................................................................10

*Barnhill v. Robert Saunders & Co*, 125 Cal. App. 3d 1 (1981) ...........................................7

*Bell v. Preferred Life Assurance Society*, 320 U.S. 238 (1943) ...........................................16

*Carter v. Anderson Merchandisers, LP*, 2010 WL 144067 (C.D. Cal. 2010) ......................10

*CNA Insurance Overtime Cases*, Los Angeles Superior Court Case No. JCC 4230 (2006) ........10

*Evans v. Washington Mutual Bank, MDL 1735*, Orange County Superior Court Case No. 02CC15415 (2008) .........................................................................................................10

*Galt G/S v. JSS Scandinavia*, 142 F.3d 1150 (9th Cir. 1998) ..............................................1

*Garza v. Bettcher Industries, Inc.*, 752 F. Supp 753 (E.D. Mich. 1990) .............................12

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) ..............................................................12

*Glass v. UBS Financial Services,* 2007 WL 221862 (N.D. Cal. 2007) ................................10

*Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 (9th Cir. 2007 ......................................15

*Hill v. Rolleri*, 615 F.2d 886 (9th Cir. 1980) .....................................................................15

*In Re Wal-Mart Wage & Hour Employment Practices Litigation,* Case No. *MDL 1735*, (D. Nev. 2009) ...........................................................................................................................10

*Kammerdiener v. Ford Motor Co.*, 2010 U.S. Dist. Lexis 23522 (C.D. Cal. 2010) ...................14

*Kanter v. Warner-Lamber Co.*, 265 F.3d 853, 857 (9thCir. 2001) ......................................12

*Lew v. Moss*, 797 F.2d 747 (9th Cir. 1986) ........................................................................14

*Lindley v. Life Investors Ins. Co. of Am.*, 2008 U.S. Dist. Lexis 104552 (N.D. Okla. 2008) ........17

*Lopez v. Lowe's HIW, Inc.*, Los Angeles Superior Court Case No. BC260702 (April 23, 2009) .10

*Mamika v. Barca*, 69 Cal .App. 4th 487 (1998) .................................................................8

*Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925 (N.D. Cal. 1992) ........................18

*Martin v. The Old Turnder Inn,* 2003 WL 22998402 (2003) ..............................................10

*Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089 (9th Cir. 2003) ........................15

*McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936) ....................................12

*Mt. Healthy City School District Board of Education*, 429 U.S. 274 (1977) ........................18

*Poole v Merrill Lynch*, Case No. CV-06-1657 (D. Oregon 2009) .......................................10

*Pullman v. Jenkins*, 305 U.S. 534 (1939) ...........................................................................15

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. 2007) ...........................17

*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996)..............................................15

*Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029 (N.D. Cal. 2002)....................................................16

*The Hertz Corp. v. Friend*, 2010 U.S. Lexis 1897 (2010) ...............................................................1

*Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004) .........................................................13

*Von Kennel Gaudin v. Remis*, 379 F.3d 631 (9th Cir. 2004) .......................................................14

**Statutes**

28 U.S.C. § 1332.......................................................................................................................11

28 U.S.C. § 1332(c)(1)..............................................................................................................13

28 U.S.C. § 1441(a) ..................................................................................................................11

28 U.S.C. § 1441(b) ..................................................................................................................18

## **INTRODUCTION**

This is a wage and hour class action for overtime wages, violation of a number of provisions of California's Labor Code, and for statutory penalties and attorneys' fees filed by plaintiff Daniel Lippold ("Lippold") against his former employer, Godiva Chocolatier, Inc. ("Godiva"). Godiva timely removed this action to federal court on January 28, 2010; Lippold moved to remand for lack of diversity jurisdiction on March 1, 2010. As we will explain in detail below, Lippold's motion to remand should be denied because:

1.     *Diversity of Citizenship.* Complete diversity exists between Lippold, a citizen of the State of California (Complaint ¶ 1; Stich Decl. ¶¶ 3-5), and Godiva, a citizen of the States of New York and New Jersey (Complaint ¶ 2; Knowles Decl. ¶¶ 2-3). *See The Hertz Corp. v. Friend*, 2010 U.S. Lexis 1897 (2010).

2.     *Amount In Controversy.* While Lippold does not allege the precise amount in controversy in this action, Godiva establishes by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000 in this action because:

- By conservative standards, Lippold's own allegations place over $38,700 of damages and penalties in controversy.

- Attorneys' fees incurred on Lippold's behalf can be considered as part of the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). In a single plaintiff wage and hour case, Lippold's attorneys can be expected to recover well in excess of $100,000; if this matter is certified as a class action, they will expect to recover fees in the low- to mid-seven figures. Godiva's good faith and conservative estimate is that, for purposes of removal, Lippold has placed into controversy only a fraction of either amount -- $40,000. *See Behrazfar v. UNISYS Corp.*, 2009 WL 5064323 at *5 (C.D. Cal. 2009); *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008).

## STATEMENT OF FACTS

A.     Diversity Of Citizenship.

1.     Lippold Is A Citizen Of California.

Lippold alleged that he was and is "an individual residing in the State of California" (Compl. ¶ 1), and that Godiva employed him as a salaried Manager at one of its California stores. (Compl. ¶ 10).  Lippold's employment application, federal tax withholding form, and background check investigation authorization submitted to Godiva, as well as Lippold's paycheck[1] each confirm that Lippold resides on Linden Street in the City of San Francisco.  In fact, Lippold's employment application indicates that he has worked continuously in California since 1989 for a number of employers, including MCI, Global Crossing and Luxottica (Stich Decl. ¶ 3).  Finally, Lippold does not allege or claim in his motion to remand that he lived or worked anywhere else outside the State of California.  For these reasons, Godiva alleged in paragraph 10 of its Notice of Removal that "Lippold is a citizen of the State of California."

2.     Godiva Is A Citizen Of New York And New Jersey.

Lippold further alleges in his Complaint that Godiva is an "unknown corporation" conducting business in California.  (Compl. ¶ 2.)  As explained in our Notice of Removal, and as confirmed by the Declaration of Ellyn Knowles, Godiva was and is "a corporation that is organized and existing under the laws of the state of New Jersey."  (Knowles Decl. ¶ 2.)  "All of Godiva's corporate officers . . . are based out of Godiva's New York office" and "All corporate decisions regarding Godiva's business activities are made by Godiva's officers in the Company's New York offices."  (Knowles Decl. ¶ 3.)  These facts clearly establish New York as Godiva's nerve center.  It is for these reasons that Godiva alleged in paragraph 9 of its Notice of Removal that "Godiva is a citizen of the States of New York and New Jersey."

---

[1]     Godiva has filed concurrently with this Memorandum a Compendium of Declarations and Exhibits in support of its opposition to Lippold's Motion to Remand.  The Compendium contains all exhibits and declarations cited in this Memorandum.  In particular, copies of Lippold's Application for Employment, W-4 Employee Withholding Allowance Certificate, Background Check Authorization Form, and Paycheck for the Period Ending February 28, 2009 are respectively attached as Exhibits "A," "B," "C" and "D" to the Declaration of Joy Stich.

B.     Amount In Controversy – Lippold's Claims.

Lippold's Complaint does not allege the precise amount in controversy in this action. Instead, Lippold's Complaint contains no fewer than eight claims for relief for alleged violations of the various California wage and hour laws, as we will outline in detail below.  In addition to an award of overtime, meal and rest period wages, statutory and civil penalties, and attorneys' fees, Lippold's prayer for relief asks for an award of actual, consequential and incidental losses and damages "according to proof," and for "such other and further relief as the court may deem just and proper."  (Prayer at 20-24).  In the paragraphs that follow we will outline what we believe to be the amount Lippold places into controversy with respect to each of his eight claims for relief.

1.     The Amount In Controversy For Lippold's First Claim For Relief For Overtime Compensation And Penalties Ranges From $30,519.20 To $20,349.60.

Lippold claims to have worked a great number of overtime hours – so much so that he claims to be entitled to overtime at the highest overtime premium rate allowed under California law.  In particular, he alleges at paragraphs 48 through 51 of his Complaint that he "*regularly and/or consistently worked*" in excess of 8 hours in one day (for which overtime wages allegedly should have been paid at 1.5 the regular rate of pay); and that he "*regularly and/or consistently worked*" in excess of 12 hours per day (for which overtime wages allegedly should have been paid at 2 times the regular rate of pay).  (Compl.. ¶¶ 48-51.)

Left primarily to its own devices, Godiva provided in its Notice of Removal a good faith, conservative valuation of Lippold's overtime claims.  As explained in paragraphs 3 and 12 of our Notice of Removal, Lippold was employed by Godiva from February 9, 2009 to July 1, 2009.[2] During his employment, Lippold received eleven paychecks from the Company: ten regular bi-monthly paychecks and one lump-sum sales incentive.[3]  Although Godiva paid Lippold a salary,

---

[2]     *See* Copies of Godiva's "Candidate Status Form" (listing Lippold's start date as Feb. 09, 2009) and Godiva's "Change of Status Form" (sent to payroll on July 15, 2009), respectively attached as Exhibits "E" and "F" to the Declaration of Joy Stich.

[3]     *See* Lippold's Earnings Summary Statement, dated August 13, 2009, attached as Exhibit "G" to the Declaration of Joy Stich.  Lippold's Earning Statement sets forth the dates and amounts of each check.

his hourly wage during his employment was approximately $23.08, which Godiva calculated by dividing Lippold's annual salary of $48,000[4] by 2080 hours (40 hrs X 52 wks).

As explained in paragraph 12(a) and footnote 3 of our Notice of Removal, Lippold would be entitled to payment at the rate of $34.62 per hour for overtime hours worked at 1.5 times his regular rate of pay ($23.08 x 1.5 =$34.62 per hour). We explained in paragraph 12(b) and footnote 4 of our Notice of Removal that Lippold would be entitled to payment at the rate of $ 46.16 per hour for overtime hours at 2 times his regular rate of pay ($23.08 x 2 =$46.16 per hour).

Lippold complains in his Motion to Remand that Godiva has somehow "inflated" his working hours because we estimated that he worked 10 hours of overtime at the $34.62 rate, and that he worked an additional 10 hours at the $46.16 rate. Frankly, it is a tad much for Lippold to complain about Godiva's estimates when he fails to shed *any* light on the subject himself. However, in our continuing attempt to provide a conservative and good faith estimate of Lippold's overtime hours, we revise our estimates, so that they are consistent with Lippold's explicit allegations that *regularly and consistently* worked in excess of 8 and 12 hours per day. This necessarily means that Lippold must have "regularly and continuously" worked at least 12 hours per day to qualify for overtime at the $34.62 rate; and that he "regularly and continuously" worked at least worked at least one more hour *in excess of* 12 hours per day, in order to qualify for overtime at the $46.16 rate. Hence, the revised valuation of Lippold's overtime claims which, we emphasize, is based entirely upon Lippold's allegations, is as follows:

|  | **M** | **T** | **W** | **TH** | **F** | **TOTAL** |
|---|---|---|---|---|---|---|
| Hours: | 13 | 13 | 13 | 13 | 13 | 65 |
| OT @ 1.5: | $138.48 (4 x $34.62) | $138.48 (4 x $34.62) | $138.48 (4 x $34.62) | $138.48 (4 x $34.62) | $138.48 (4 x $34.62) | $692.40 |
| OT @ 2.0: | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $230.08 |
|  |  |  |  | Weekly Total: | | $922.48 |
|  |  |  |  | Grand Total (20 X $922.48) | | $18,449.60 |

---

[4]  Lippold's annual salary at the time of his hire was $48,000 a year. *See* Lippold's offer of employment, dated January 29, 2009, attached as Exhibit "H" to the Declaration of Joy Stich.

To emphasize the point that this is a conservative estimate, we note that our calculations *ignore* the suggestions in paragraphs 47 and 48 of the Complaint that Lippold worked *seven days* in a row and that he would thereby be entitled to overtime at 1.5 times the regular rate of pay for the first 8 hours, and overtime at 2.0 times the regular rate for hours in excess of 8, *on the seventh workday* in a workweek.  If we take Lippold at his word as to these allegations, the value of his overtime claims would further skyrocket as follows:

| | **M** | **T** | **W** | **TH** | **F** | **S** | **S** | **TOTALS** |
|---|---|---|---|---|---|---|---|---|
| Hours: | 13 | 13 | 13 | 13 | 13 | 13 | 9 | 87 |
| OT @ 1.5: | $138.48 (4 x $34.62) | $138.48 (4 x $34.62) | $138.48 (4 x $34.62) | $138.48 (4 x $34.62) | $138.48 (4 x $34.62) | $138.48 (4 x 34.62) | $276.96 (8 x 34.62) | $1,107.84 |
| OT @ 2.0: | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $46.16 (1 X $46.16) | $323.12 |
| | | | | | Weekly Total: | | | $1,430.96 |
| | | | | | Grand Total (20 X $1,430.96) | | | $28,619.20 |

In addition to seeking recovery of overtime wages, Lippold's first claim for relief also seeks to recover statutory penalties for the alleged failure to timely pay his overtime wages.  In particular, and assuming that Lippold worked for Godiva for 10 pay periods, he seeks to recover the additional amounts as penalties:

| CLAIM | DESCRIPTION | TOTAL |
|---|---|---|
| Cal. Lab. Code §§ 2699(f) & (g) (Compl. ¶ 56, Prayer ¶ 8.) | $100 / pay period for initial violation  $200 / pay period for subsequent violations | $1,900.00  ($100 + [$200 x 9 pay periods]) |

Hence, the amount in controversy for Lippold's first claim for relief ranges from a high of approximately $30,519.20 ($28,619.20 + $1,900.00) to a low of $20,349.60 ($18,449.60 + $1,900.00).

5

2.      <u>The Amount In Controversy For Lippold's Second And Third Claims For Relief For Meal And Rest Period Violations Is $6,108.</u>

Lippold paints with a similarly broad brush by complaining in paragraphs 62 through 65 of his second claim for relief that Godiva *routinely* violated California Labor Code sections 226.7 and 512(a) by failing to provide him with a first meal period when he worked in excess of 6 hours, and *routinely* failed to provide him with a second meal period when he worked in excess of 10 or 12 hours per day.  In paragraphs 73 through 75 of his third claim for relief for alleged failure to provide rest periods in violation of Labor Code section 226.7 and the Industrial Welfare Commission's Wage Orders, Lippold further alleges that Godiva *routinely* failed to provide two rest breaks per day during his employment.

Given the breadth of Lippold's allegations, Godiva could reasonably interpret Lippold's statement to mean that the Company's routine interruptions and failure to authorize breaks meant that Lippold never took proper meal and rest breaks.  Nevertheless, for purposes of calculating the amount in controversy, Godiva only assumes Lippold missed *either* five meal periods *or* five rest breaks per week as follows:[5]

| CLAIM | DESCRIPTION | TOTAL |
|---|---|---|
| Cal. Lab. Code § 226.7 (Compl. ¶¶ 68 & 77; Prayer ¶¶ 12 & 18) | One hour of pay at the regular rate for each day a meal *or* rest break was not provided. | $2,308.00 ($23.08 x 5 x 20) |
| Cal. Lab. Code §§ 2699(f) & (g) (Compl. ¶ 69, Prayer ¶ 14) | Meal period violations:  $100 / pay period for initial violation; $200 / pay period for subsequent violations | $1,900.00 ($100 + [$200 x 9 pay periods]) |
| Cal. Lab. Code §§ 2699(f) & (g) (Compl. ¶ 79, Prayer ¶ 20) | Rest period violations:  $100 / pay period for initial violation; $200 / pay period for subsequent violations | $1,900.00 ($100 + [$200 x 9 pay periods]) |
| | Total: | $6,108 |

---

[5]      This estimate constitutes another refinement from Godiva's Notice of Removal, which takes Lippold's complaint at face value by assuming that he would attempt separately to recover both for lost meal periods and for lost rest periods in the same day.  We do not indulge this assumption here, given that it is inconsistent with the provisions of Labor Code section 226.7.

3.     The Amount In Controversy For Lippold's Fourth Claim For Relief For Alleged Failure to Pay Wages During His Employment Is $1,900.00.

Lippold's fourth claim for relief is related to his first.  He assumes that he was entitled to payment of overtime wages as alleged in the first claim for relief, and then alleges that Godiva violated Labor Code section 204 by failing to pay these additional wages "no later than the payday for the next regular pay period."  (Compl. ¶ 81 & 82.)  Because Lippold alleges that he *regularly and consistently* worked without compensation in each of his 10 pay periods.[6]  Hence,  the amount in controversy for the fourth claim for relief can be calculated as follows:

| CLAIM | DESCRIPTION | TOTAL |
|---|---|---|
| Cal. Lab. Code §§ 2699(f) & (g) (Compl. ¶ 83, Prayer ¶ 24) | Meal period violations:  $100 / pay period for initial violation; $200 / pay period for subsequent violations | $1,900.00  ($100 + [$200 x 9 pay periods]) |

4.     The Amount In Controversy For Lippold's Fifth Claim For Failure To Pay Wages Upon Termination Of Employment Is $5,639.20.

In his fifth claim for relief, Lippold alleges that Godiva violated California Labor Code sections 201 or 202 by failing to pay all wages due upon termination of employment.  (Compl. ¶¶ 85-86.)  In the context of this action, the "failure to pay wages" includes Godiva's alleged complete failure to pay any overtime wages Lippold claims to be due.

Lippold seeks to recover two different types of statutory penalties arising from this alleged failure to pay wages.  First, he seeks to recover the general penalties available pursuant to Labor Code sections 2699(f) & (g).  In addition, he seeks to recover "waiting time penalties"  pursuant to Labor Code section 203, which obligates employers to continue to pay the employee's wages as a penalty, running from the date upon which wages were due to be paid for a maximum of 30 days, unless the wages are earlier paid.  *See generally*, *Barnhill v. Robert Saunders & Co*, 125 Cal. App. 3d 1, 7 (1981) (describing waiting time penalties).  Inasmuch as Lippold claims that Godiva totally failed to pay his overtime wages, his complaint puts at issue his entitlement to the maximum 30-day penalty.

---

[6]     Lippold correctly notes in his Motion for Remand that he worked a total of 10, and *not* 11, pay periods as alleged in our Notice of Removal.  Our calculations are now based on that lowered 10 pay period total.

Hence, the amount in controversy as to Lippold's fifth claim for relief can be calculated as follows:

| CLAIM | DESCRIPTION | TOTAL |
|---|---|---|
| Cal. Lab. Code § 203 (Compl. ¶¶ 88 & 89; Prayer ¶ 27) | 30 days' waiting time penalty at Lippold's regular rate of pay. | $5,539.20 <br> ($23.08 x 8 = $184.64 [regular rate for 1 day] <br> 184.64 x 30 days = $5,539.20)[7] |
| Cal. Lab. Code §§ 2699(f) & (g) (Compl. ¶ 90, Prayer ¶ 29) | Failure to pay wages on termination / resignation violations: $100 / pay period for initial violation | $100 <br> (one violation) |
| | Total: | $5,639.20 |

### 5. The Amount In Controversy For Lippold's Sixth Claim For Failure To Provide Proper Pay Stubs Is $2,850.00.

Lippold alleges in his sixth claim for relief that Godiva failed to provide him itemized wage statements as required by California Labor Code section 226(a). For this alleged violation, Lippold seeks: (a) Labor Code section 226(e) penalties in an amount "not exceeding $4,000 per employee;" and (b) additional statutory penalties available pursuant to pursuant to Labor Code section 2699(f) and (g). (Compl. ¶ 96-97.) Hence, the amount in controversy for this claim is as follows:

---

[7] Lippold appears to claim in his Motion to Remand that our waiting time penalties calculation should have included his overtime hours: "[Godiva's overtime assumption] is mathematically impossible when analyzed in conjunction with Godiva's other [waiting time penalty] assumption that Lippold worked an average of eight (8) hours per day." (Remand at 11). Lippold's claim is meritless because it confuses and conflates an employee's ability to recover overtime wages with the ability to recover waiting time penalties. Waiting time penalties are *always* calculated by multiplying the employee's regular rate of pay times 8 hours times the number of days payment was delayed. *See Mamika v. Barca*, 69 Cal .App. 4th 487, 492-493 (1998) ("[U]npaid wages continue to accrue on a daily basis for up to a 30-day period. Penalties accrue not only on the days that the employee might have worked, but also on nonworkdays . . . The critical computation required by section 203 is the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"). Of course, if Lippold prefers that Godiva rely on Lippold's allegation that he "regularly and/or consistently" worked at least twelve hours per day, Godiva could easily revise its calculation and thus increase the amount in controversy of this claim from $5,539.20 to $8,308.80.

| CLAIM | DESCRIPTION | TOTAL |
|---|---|---|
| Cal. Lab. Code §226(a) (Compl. ¶¶ 96 & 97; Prayer ¶ 32) | Itemized wage statement penalty:  $50 for initial pay period; $100 for subsequent pay periods. | $950.00 ($50 + [$100 x 9 pay periods]) |
| Cal. Lab. Code §§ 2699(f) & (g) (Compl. ¶ 96 & 97; Prayer ¶ 34) | Itemized wage statement violations:  $100 / pay period for initial violation; $200 / pay period for subsequent violations | $1,900.00 ($100 + [$200 x (9 pay periods)] |
| | Total: | $2,850.00 |

6.      The Amount In Controversy For Lippold's Seventh Claim For Failure To Maintain Adequate Payroll Records Is $1,900.00.

Lippold alleges in his seventh claim for relief that Godiva violated California Labor Code section 1174(d) by failing to keep accurate payroll records with respect to his employment. (Compl. ¶ 100.)   Again, he seeks general penalties pursuant to California Labor Code section 269(f) & (g) as a result of these alleged violations.  Hence, the amount in controversy as to this claim is as follows:

| CLAIM | DESCRIPTION | TOTAL |
|---|---|---|
| Cal. Lab. Code §§ 2699(f) & (g) (Compl. ¶ 103, Prayer ¶ 38) | Accurate payroll record violations:  $100 / pay period for initial violation; $200 / pay period for subsequent violations | $1,900.00 ($100 + [$200 x (9 pay periods)] |

C.      Amount In Controversy – Godiva's Notice Of Removal Assumes That Lippold Would Incur Only $40,000 In Attorneys' Fees.

In his Complaint, Lippold alleges that he is entitled to recover his attorneys' fees pursuant to Labor Code Sections 1194 and 2699, and California Code of Civil Procedure Section 1021.5.  In fact, Lippold mentions attorneys' fees in his complaint no less than *18 times*.  (Compl. ¶¶ 55, 56, 69, 79, 83, 90, 97, 103, and 112; Prayer for Relief ¶¶ 7, 8, 14, 20, 24, 29, 34, 38, and 41.).

As this Court is aware, the amount of attorneys' fees that can be expended in wage and hour litigation can and usually does exponentially exceed the amount recovered by individual plaintiffs, let alone by class members.  By way of example only, if this matter was litigated on behalf of Lippold alone, his counsel could be expected to incur attorneys' fees into six figures

through trial. *See Martin v. The Old Turnder Inn,* 2003 WL 22998402 (2003) (awarding a $147,610 in attorneys' fees and costs in a single-plaintiff wage and hour case in which the plaintiff only recovered $49,508 in compensatory and punitive damages); *see also Bandoy v. Huh*, 1996 WL 675978 (1996) (awarding $73,680 in a wage-and-hour employee misclassification case).

Of course, where wage-and-hour claims are prosecuted on a class-wide basis, the amount of attorneys' fees can move into seven-figure range. *See Carter v. Anderson Merchandisers, LP*, 2010 WL 144067 (C.D. Cal. 2010) (preliminarily approving joint stipulation and settlement and release containing $906,250 in attorneys' fees in overtime and meal/rest period case); *Poole v Merrill Lynch*, Case No. CV-06-1657 (D. Oregon 2009) ("Class Counsel will ask the Court to award them attorneys' fees of up to 25% of the Maximum Settlement Amount, or $10,875,000");[8] *In Re Wal-Mart Wage & Hour Employment Practices Litigation,* Case No. MDL 1735 (D. Nev. 2009) ("Class Counsel shall request that the Court award Class Counsel a reasonable attorneys' fee of 33.333% of the total Class Settlement Amount of $85,000,000" or $28,333,333);[9] *Evans v. Washington Mutual Bank, MDL 1735*, Orange County Superior Court Case No. 02CC15415 (2008) (attorneys' fees award calculated at "27.5 percent of the Maximum Settlement Amount, which is estimated to be equal to $8,937,500.00");[10] *Glass v. UBS Financial Services,* 2007 WL 221862 (N.D. Cal. 2007) (granting class counsel's application for attorneys fees of $11,500,000 in overtime and improper payroll deductions case); *CNA Insurance Overtime Cases*, Los Angeles Superior Court Case No. JCC 4230 (2006) (attorneys' fees calculated at "33 1/3% ($8,937,500.00) of the Maximum Settlement Amount").[11] Indeed, *Lippold's own attorneys* are no strangers to recovering attorneys' fees in the seven-figure range. *See Lopez v. Lowe's HIW, Inc.*, Los Angeles Superior Court Case No. BC260702 (April 23, 2009) ("In this case, class counsel will request an award of 33 1/3% ($9,833,333.34) of the Maximum Settlement Amount").[12]

---

[8]      Attached as Exhibit "I" to Declaration of John P. Migliarini.

[9]      Attached as Exhibit "J" to Declaration of John P. Migliarini.

[10]      Attached as Exhibit "K" to Declaration of John P. Migliarini.

[11]      Attached as Exhibit "L" to Declaration of John P. Migliarini.

[12]      Attached as Exhibit "M" to Declaration of John P. Migliarini.

In its removal petition, Godiva made clear that "[a]ttorneys' fees in cases of this nature, which are taken through trial, routinely exceed $100,000 or more." (Notice of Removal ¶ 20.) Nonetheless, Godiva explained that, "even if Lippold's attorneys' fees amount to a mere $40,000, the amount in controversy threshold is satisfied in this case." (*Id.*)

D.    <u>In Summary, Godiva's Conservative Estimate Of The Amount In Controversy Is $78,746.80.</u>

To sum up, Godiva's reasonable good faith estimate is that the amount in controversy in this matter is at least $78,746.80, as demonstrated by the following summary chart:

| CLAIM | AMOUNT |
|---|---|
| First claim for relief | $20,349.60 to $30,519.20 |
| Second and third claim for relief | $6,108.00 |
| Fourth claim for relief | $1,900.00 |
| Fifth claim for relief | $5,639.20 |
| Sixth claim for relief | $2,850.00 |
| Seventh claim for relief | $1,900.00 |
| Attorneys' fees | $40,000.00 |
| Total | $78,746.80 to $88,916.40 |

## ARGUMENT

I.   *MCNUTT, KANTER* AND *GAUS* ESTABLISH A TWO STEP STANDARD FOR EVALUATING THE PROPRIETY OF REMOVAL; DEFENDANTS ARE NOT REQUIRED TO "PROVE" DIVERSITY IN NOTICES OF REMOVAL.

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). To exercise diversity jurisdiction over a removed action, this Court must find that (1) the parties were citizens of different states, and (2) the amount in controversy exceeded $75,000 exclusive of interest and costs. *See* 28 U.S.C. § 1332.

The standards for evaluating whether removal is proper are well-established.  The removing defendant bears the burden of establishing the basis for this Court's exercise of removal jurisdiction.  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992).  In meeting this burden the defendant first carries the initial requirement to allege facts sufficient to establish complete diversity of citizenship."  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  A notice of removal must do more than merely recite conclusory allegations that complete diversity exists.  *See Gaus*, 980 F.2d at 567 (holding that mere recitation of conclusion regarding amount in controversy, without identifying any of supporting facts, is insufficient); *Garza v. Bettcher Industries, Inc.*, 752 F. Supp 753, 763 (E.D. Mich. 1990) (same).  However, while "bare allegations" are insufficient, a notice of removal need only "set forth actual facts in its removal notice that would support the court's exercise of jurisdiction."  *Gaus*, 980 F.2d at 566.

Hence, it is settled that, "at [the notice of removal] stage of the case, the defendants were merely required to allege (not to prove) diversity . . . ."  *Kanter*, 265 F.3d at 857.[13]  Nothing more is required of a removing defendant unless and until the plaintiff or the court challenges the jurisdictional allegations contained in the notice of removal.  *McNutt*, 298 U.S. at 189; *Gaus*, 980 F.2d at 567.  As the Supreme Court explained in *McNutt*:

> "The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. *If his allegations of jurisdictional facts* [in a notice of removal] *are challenged by his adversary* in any appropriate manner, *he must support them with competent proof.*"

---

[13]     In light of the Ninth Circuit's explicit holding in *Kanter* that removing defendants need not *prove* diversity in a notice of removal, Lippold simply cannot credibly insist that remand is mandated because Godiva allegedly failed to provide "competent evidence justifying its allegations" (Motion to Remand at 5.)  Godiva is aware of no case that requires *at the time of removal* that a removing party present *competent evidence* establishing the court's jurisdiction. Indeed, Lippold cites no case requiring submission of competent evidence at the time of removal. As cited in Lippold's own Motion, Godiva need only "set forth actual *facts* in its removal notice that would support the court's exercise of jurisdiction." *Gaus*, 980 F.2d at 566.

*McNutt*, 298 U.S. at 189 (emphasis added); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("[W]e reiterate that the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint"); *Gaus*, 980 F.2d at 567 (quoting same passage).

## II.   COMPLETE DIVERSITY EXISTS BETWEEN GODIVA AND LIPPOLD.

### A.   Godiva Is A Citizen Of New York And New Jersey.

A corporation is a citizen of its state of incorporation and of the state in which it has its principal place of business.  28 U.S.C. § 1332(c)(1).

Godiva explicitly alleged in its Notice of Removal that the Company was incorporated under the laws of the State of New Jersey; that its principal place of business was located in New York, and that it was a citizen of the States of New Jersey and New York for that reason.  (Notice of Removal ¶ 9).  Under *Kanter* and *Gaus*, nothing more was required.

In opposition to Lippold's motion to remand, we now offer additional evidence.  The accompanying Declaration of Ellyn Knowles confirms that Godiva was incorporated under the laws of the State of New Jersey.  (Knowles Decl. ¶2.)  In addition, the Knowles declaration confirms that *all* of Godiva's officers and managing agents work out of the Company's corporate headquarters in New York City, and that all corporate decisions that direct, control and coordinate the Company's operations emanates from the Company's New York corporate offices.  These facts conclusively establish Godiva's citizenship in New York and New Jersey.  *See Hertz Corp.,* 2010 U.S. Lexis 1897 at ** 33 (rejecting the Ninth Circuit's place of activities test, which focused on the amount of business transacted in a particular state, and adopting the "nerve center" test, which "points courts in a single direction, towards the center of [the corporation's] overall direction, control, and coordination").

### B.   Lippold Is A Citizen Of California.

This is *not* a case in which the removing defendant sought to invoke diversity jurisdiction by alleging only that the plaintiff was a *resident* of California.  In this case, Godiva explained in its Notice of Removal that Lippold *has* alleged that he is a resident of California.  However, Godiva also went on to explicitly allege that Lippold *was* a citizen of the State of California.  At the

pleading stage, nothing more is required.  *E.g.*, *Kammerdiener v. Ford Motor Co.*, 2010 U.S. Dist. Lexis 23522, *3-*4 (C.D. Cal. 2010).

In opposition to Lippold's motion to remand, we now offer additional evidence.  In the Ninth Circuit, a natural person is a "citizen" for diversity jurisdiction purposes in the state where she is domiciled.  *Kanter*, 265 F.3d at 857.  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."  *Von Kennel Gaudin v. Remis*, 379 F.3d 631, 636 (9th Cir. 2004).  It is settled that, "A person's old domicile is not lost until a new one is acquired.  A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely."  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (citations omitted).

Under this standard, the facts point only to the conclusion that Lippold is a citizen of the State of California.  In particular:

- Lippold alleged in his complaint that he "resides" in California.  (Compl.. ¶ 1).  And while residency and citizenship are not coextensive, a declaration of residency can be considered in determining domicile.  *See Lew*, 797 F.2d at 750 (place of residence constitutes evidence of domicile).

- Lippold certified under penalty of perjury on his 2009 federal withholding tax forms that his "home address" was located on Linden Street in San Francisco.  (Stich Decl. ¶ 3)  *See Lew*, 797 F.2d at 750 (place of payment of taxes constitutes evidence of domicile).

- In the Background Investigation Authorization Form he executed upon beginning work for Godiva, Lippold listed his three most recent residence addresses in the greater San Francisco environs – Linden Street in San Francisco, Hamilton Drive in Pleasant Hill, and Bryant Street in San Francisco.  (Stich Decl. ¶ 3)  *See Lew*, 797 F.2d at 750 ("Moss conceded he lived in California at least until September of 1984.  The presumption in favor of Moss's established domicile (California) as against his allegedly newly acquired one (Hong Kong) plainly applies here").

- Lippold certified in his employment application that he has worked continuously in California since 1989 for a number of employers, including MCI, Global Crossing and Luxottica.  (Stich Decl. ¶ 3)  *See Id.* (places of employment or businesses constitute evidence of domicile).

The existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed.  *Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir. 1980).  In this case, the facts point one way, that Lippold is domiciled in, and is therefore a citizen of, the State of California.  Lippold does not claim otherwise in his Motion to Remand.  Therefore, Godiva has satisfied its burden of proving Lippold's California citizenship and complete diversity exists in this case.  *Pullman v. Jenkins*, 305 U.S. 534, 541 (1939).

III.   THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

A.   Godiva's Notice Of Removal Satisfies All Applicable Requirements For Establishing Jurisdictional Amount In Controversy.

"Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *see also*, *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 697-705 (9th Cir. 2007.

In this case, Godiva's Notice of Removal did considerably more than simply recite that "the amount in controversy in a case exceeds the jurisdictional minimum." *See Gaus*, 980 F.2d at 567 (holding that mere recitation of conclusion regarding amount in controversy, without identifying any of supporting facts, is insufficient).  Instead, Godiva explained in detail at paragraphs 12 through 19 of its Notice of Removal the factual basis for its conclusion that the $75,000 diversity threshold had been satisfied.  Again, under *McNutt*, *Kanter* and *Gaus*, nothing more is required.

B.   Godiva Established Its Good Faith Estimate Of The Value Of Lippold's Various Claims, From $38,746.80 To $48,916.40.

 In opposition to Lippold's Motion for Remand, Godiva evaluated all components of Lippold's damage claim in demonstrating that the amount in controversy threshold has been satisfied.  *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943).  In particular, we demonstrated in the preceding sections of this memorandum that the value of Lippold's various overtime, wage and penalty claims ranges from a low of $38,746.80 to a high of $48,916.40.

This showing more than suffices for purposes of opposing a motion to remand.  Where, as here, the plaintiff fails to allege with precision the precise number of overtime hours worked, or the precise number of meal or rest periods missed, or the precise value of *any* of the claims he asserts, the removing party's burden is "not daunting."  The defendant is *not* obligated to "research, state, and prove the plaintiff's claims for damages."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008).  Instead, as Judge Guilford recently noted, is obligated only to provide a good faith, conservative estimate, based on the evidence wherever possible, as to the value of the plaintiff's claims.  *Behrazfar v. UNISYS Corp.*, 2009 WL 5064323 at *5 (C.D. Cal. 2009) ("Plaintiff also argues that Defendant improperly assumes that class members worked 40 weeks per year without providing evidence to support this assumption  . . . . But this deficiency alone does not defeat Defendant's argument.  While Defendant lacks evidentiary support concerning the amount of weeks worked per year, the Court finds that its estimate was made in good faith.  Further, Plaintiff does not attack the other figures that Defendant used to support its calculations.  And Defendant has established that these figures are relatively conservative and based on evidence").

C.   Godiva Established That Lippold's Attorneys' Fees Will Easily Exceed $40,000.

Attorneys' fees are properly included in the amount in controversy for purposes of evaluating diversity jurisdiction.  *See, e.g.*, *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (holding that where

1    attorneys' fees are "recoverable by statute," fees reasonably anticipated over the life of the

2    litigation are included in the amount in controversy analysis).

3            Once again, Lippold's complaint does not, and cannot realistically be expected to provide

4    an estimate of the amount of attorneys' fees that might be expended in this case.  However, as we

5    have demonstrated above, a review of recent California state and federal cases shows that

6    attorneys in single-plaintiff wage-and-hour actions *routinely* recover six-figure attorneys' fees

7    awards in single-plaintiff cases, and seven-figure awards in wage claims that are certified for class

8    treatment.  Under these circumstances, an estimate that all seven of Lippold's listed attorneys will

9    expend at least $40,000 on his behalf is made in good faith, and is eminently reasonable.  *See*

10   *Lindley v. Life Investors Ins. Co. of Am.*, 2008 U.S. Dist. Lexis 104552 (N.D. Okla. 2008) (finding

11   that defense estimate that plaintiff might recover "$45,000 for a potential award of attorneys' fees

12   was not excessive or unreasonable").

13           Put somewhat differently, assuming for purposes of Godiva's Opposition that Lippold's

14   lawyers were to charge as little as $400 per hour[14], Lippold would exceed Godiva's estimate of

15   $40,000 in attorneys' fees in 100 hours.  To put this number in perspective, attorneys in a recent

16   federal court wage-and-hour case spent 934 hours litigating a case that never made it to trial.  *See*

17   *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 at *3 (E.D. Cal. 2007).

18           Thus, in spite of Lippold's claims that Godiva's $40,000 attorneys' fees allegation is

19   "ambiguous" and "unreasonable," Godiva's has shown that this number is conservative by any

20   measure – single-plaintiff *or* class-action, pro-rata *or* in the aggregate, estimated *or* actual.

## CONCLUSION

21

22           Godiva need not, and does not, concede that Lippold will in fact prevail on his claims or

23   that he will *in fact* recover in excess of $75,000.  "Here, as with many motions to remand based on

24   the amount in controversy, the parties are put in an awkward situation. . . . Defendant, striving to

25   establish the federal court's jurisdiction, attempts to prove that Plaintiff's damages sought are

26

27   ___

         [14]      In determining a reasonable attorneys' fee award, a court must consider what constitutes a
     reasonable hourly rate for work performed in the relevant community by attorneys of similar skill,
     experience, and reputation.  *See Mendez v. The County of San Bernardino*, 540 F.3d 1109, 1129
28   (9th Cir. 2008) (finding lodestar fee rate of $400, *reduced* from request of $550).

1   higher than the threshold." *Behrazfar v. UNISYS Corp.*, 2009 WL 5064323 at *5 (C.D. Cal. 2009).

2   Godiva does not concede in any way that the allegations in the Complaint are accurate or that

3   Lippold or any proposed class member, current employee, or former employee is entitled to any

4   recovery in this case, or are appropriately included in the putative class.

5       Godiva seeks only to establish the propriety of removal by demonstrating that the amount

6   *in controversy* exceeds $75,000.  Nothing more is required to establish this Court's diversity

7   jurisdiction.  *See Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 928 (N.D. Cal.

8   1992)("Defendant has demonstrated to the court's satisfaction that it *would* suffer damages far in

9   excess of fifty thousand dollars *if Mangini were to prevail*  on his claims.  Accordingly, the court

10  finds that the amount-in-controversy requirement of diversity jurisdiction is satisfied"); *cf. Mt.*

11  *Healthy City School District Board of Education*, 429 U.S. 274, 277 (1977)(plaintiff's inability to

12  prove an injury exceeding the minimum amount in controversy does not affect jurisdiction).

13      Godiva respectfully submits that this is an action over which the Court has original

14  diversity jurisdiction pursuant to 28 U.S.C. § 1332, and that removal is proper under 28 U.S.C. §

15  1441(b).  Accordingly, the Court should allow this action to proceed in accordance with standard

16  practice and procedure.

17

18  Dated:  March 19, 2010.

      JONES DAY
      ROBERT A. NAEVE
      STEVEN M. ZADRAVECZ
      JOHN P. MIGLIARINI

      By:   /s/
            Steven M. Zadravecz
      Attorneys for Defendant
      GODIVA CHOCOLATIER, INC.